[EDITORS' NOTE: THIS PAGE CONTAINS HEADNOTES. HEADNOTES ARE NOT AN OFFICIAL PRODUCT OF THE COURT, THEREFORE THEY ARE NOT DISPLAYED.] *Page 158 
Alabama Mobile Homes filed this petition for a writ of mandamus seeking an order from this court to the Honorable Ingram Beasley of the Circuit Court of Jefferson County directing Judge Beasley to set aside or quash a pre-judgment garnishment ordered at the behest of the plaintiff, ITT Diversified Credit Corporation.
On April 1, 1983, Alabama Mobile Homes executed a financing statement and security agreement granting ITT a security interest in its inventory of mobile homes and in all proceeds generated from sales of its inventory. Upon the sale of any mobile home financed by ITT, Alabama Mobile Homes was obligated by its agreement to "immediately pay [ITT] in cash the pertinent amount of the total indebtedness allocable [to the mobile home which was sold]."
During January of 1984 Alabama Mobile Homes sold a mobile home in which ITT had a security interest, without paying ITT the amount due it allocable to the mobile home. On March 30, 1984, ITT notified Alabama Mobile Homes that it was in default and ITT filed suit to recover the funds due it under the parties' agreement. In his deposition, the president of Alabama Mobile Homes testified that the proceeds of the sale of the mobile home in question had been deposited in a checking account at Colonial Bank of Birmingham. ITT then filed a motion for a pre-judgment writ of seizure, along with the requisite bond and supporting affidavit, seeking to have the $11,500.00 seized. A judge of the Birmingham Division of the Jefferson County Circuit Court entered an order directing the sheriff to take possession of $11,500.00 from the defendant's bank account. When the sheriff attempted to execute the order, he was informed that the bank account did not contain $11,500.00. ITT then amended its motion by asking for an order directing the sheriff to seize all sums up to $11,500.00. The judge then issued an order in accordance with the amended motion and the sheriff collected $2,352.50 from the defendant's bank account. The sheriff never served a notice or copy of the order on the defendant. The money was deposited in the circuit court clerk's office. Alabama Mobile Homes filed a motion to quash the garnishment. After a hearing, the Honorable Ingram Beasley overruled the motion.
The following issues were presented in the parties' briefs:
 (1) Whether this Court or the Court of Civil Appeals has jurisdiction over the petition;
 (2) Whether Alabama's prejudgment garnishment procedure violates the due process requirements of the United States Constitution;
 (3) Whether the funds seized were identifiable proceeds of the secured property;
 (4) Whether the trial court should have quashed the writ because the defendant was not given notice of the garnishment; *Page 159 
 (5) Whether the action should have been brought in the Bessemer Division instead of the Birmingham Division of the Jefferson County Circuit Court.
 1. JURISDICTION
The respondent has raised an issue concerning our jurisdiction over this proceeding. Since subject matter jurisdiction is a threshold matter, we will dispose of that issue first. The Court of Civil Appeals has exclusive jurisdiction in civil cases where the "amount involved" does not exceed $10,000.00. Where there has been a recovery in the lower court, the amount involved is the amount of the recovery. ITT argues that the recovery was $2,352.50 and, therefore, that the Court of Civil Appeals has exclusive jurisdiction over the issuance of writs of mandamus in relation to matters concerning its claim. Sections 12-3-10 and 12-3-11, Code of Alabama.
Jurisdiction is determined by the amount of the recovery ordered by the lower court. It is not affected by the fact that the judgment has been only partially satisfied. See GreatCentral Insurance Co. v. Edge, 292 Ala. 613, 298 So.2d 607
(1974). In this case the court ordered the sheriff to seize all funds "up to $11,500.00." Although the sheriff was able to seize only $2,352.50, the trial court ordered a recovery of $11,500.00. Therefore, the amount involved exceeds $10,000.00 and this Court has jurisdiction.
 2. CONSTITUTIONALITY
Petitioner argues that Alabama's pre-judgment garnishment procedure violates the due process standards set out in NorthGeorgia Finishing, Inc. v. DiChem, Inc., 419 U.S. 601,95 S.Ct. 719, 42 L.Ed.2d 751 (1975). The petition states that "a pre-judgment garnishment of a bank account is, on its face, unconstitutional."
In North Georgia Finishing, supra, the Supreme Court ruled that Georgia's prejudgment garnishment statute violated due process guarantees of the fourteenth amendment. The Georgia statute allowed a pre-judgment garnishment of a bank account pursuant to an order issued by the clerk of the court based only on conclusory allegations in an affidavit by the plaintiff's attorney, who was not required by the statute to have personal knowledge of the facts contained in the affidavit. The statute prescribed the filing of a bond by the defendant as the only means of dissolving the garnishment. There was no provision for an early hearing at which the creditor would be required to demonstrate at least probable cause for the garnishment.
We deem it unnecessary to elaborate on the procedure for a pre-judgment garnishment under Alabama law. It is sufficient to say that the provisions of Rule 64, Alabama Rules of Civil Procedure, coupled with the requirements of the garnishment statute, §§ 6-6-370 et seq., Alabama Code 1975, appear to be adequate to protect the defendant's due process rights. Rule 64 was drafted specifically to comply with the mandates of Fuentesv. Shevin, 407 U.S. 67, 92 S.Ct. 1983, 32 L.Ed.2d 556 (1972), and its progeny, including North Georgia Finishing, supra.
 3. WHETHER THE PLAINTIFF HAD A SECURITY INTEREST IN THE FUNDS
It is not disputed that ITT had a perfected security interest in a mobile home which Alabama Mobile Homes sold and that Alabama Mobile Homes did not remit that portion of the proceeds of the sale due to ITT under the terms of the parties' agreement. Under § 7-9-306 (2), ITT's security interest in the mobile home continued in the "identifiable cash proceeds" of the sale. Alabama Mobile Homes argues that the funds in question are not the identifiable cash proceeds of the sale and, therefore, that ITT did not have a security interest in the funds. Alabama Mobile Homes contends that the proceeds from the sale of the mobile home in question were transferred from its bank account "to the defendant's attorney for other purposes." *Page 160 
When proceeds of a sale of collateral are placed in the debtor's bank account the proceeds remain identifiable and a security interest in the funds continues even if the funds are commingled with other funds. Anderson, Clayton Co. v. FirstAmerican Bank, 614 P.2d 1091, 1093, 29 U.C.C.Rep. 280 (Okla. 1980). The rules employed to distinguish the identifiable proceeds from other funds are liberally construed in the creditor's favor by use of the "intermediate balance rule." See, e.g., C.O. Funk Sons, Inc. v. Sullivan Equipment, Inc.,89 Ill.2d 27, 59 Ill.Dec. 85, 431 N.E.2d 370 (1982); In reTurner, 32 U.C.C.Rep. 1240, 13 B.R. 15, 22 (Bkrtcy. Neb. 1981);In re Martin, 36 U.C.C.Rep., 25 B.R. 25, 28 (Bkrtcy.N.D.Tex. 1982). This rule provides a presumption that proceeds of the sale of collateral remain in the account as long as the account balance equals or exceeds the amount of the proceeds. The funds are "identified" based on the assumption that the debtor spends his own money out of the account before he spends the funds encumbered by the security interest. If the account balance drops below the amount of the proceeds, the security interest in the funds on deposit abates accordingly. This lower balance is not increased if funds are later deposited into the account. See Skilton, "The Secured Party's Rights in a Debtor's Bank Account Under Article 9 of the Uniform Commercial Code," 1977 So.Ill.Univ.L.J. 120, 140-143. The rule is analogous to the presumption which arises when a trustee commingles trust funds with his own. In re Turner, supra, 13 B.R. at 22.
In this case the proceeds were deposited into the debtor's account. When the garnishment was executed, the account balance was $2,352.50. Under the intermediate balance rule, ITT was entitled to the $2,352.50 unless the balance of the account was lower than $2,352.50 at some time between the deposit of the proceeds and the execution of the garnishment. If there was a lower intermediate balance, then ITT was entitled only to an amount equal to the lower balance.
It would appear that the resolution of this issue would depend on where the burden of proof lies. At the hearing on the defendant's motion to quash the writ, was it incumbent on ITT to introduce evidence that the defendant's account balance had not been lower than $2,352.50 at any time since the proceeds of the sale were deposited? Or should it have been incumbent on Alabama Mobile Homes to show that its lowest intermediate balance was less than the amount recovered? Since application of the lowest intermediate balance rule was not discussed in the parties' briefs, the issue of allocating the burden of proof was not argued. Alabama Mobile Homes did, as a part of its due process argument, make the assertion that due process requires that the burden of proof remain with the creditor. The basis of that position is a statement found in North GeorgiaFinishing, supra. We do not read that case as broadly as the defendant does, however. In that case the Court states, as one of its reasons for striking down the Georgia statute, the fact that "There is no provision [in Georgia's pre-judgment garnishment law] for an early hearing at which the creditor would be required to demonstrate at least probable cause for the garnishment." 419 U.S. at 607, 95 S.Ct. at 723. As we readNorth Georgia Finishing, due process requires only that at the hearing the creditor establish "probable cause for the garnishment."
In this case it is undisputed that ITT had a security interest in the proceeds and that Alabama Mobile Homes commingled the proceeds with its own money instead of paying the funds to ITT as it had agreed to. It can hardly be disputed that there was sufficient evidence in the record before the court to support a finding of a risk of "concealment, transfer, or other disposition" of the funds. The defendant's transfer of funds to its attorney could be construed as an attempt to prevent ITT from receiving the proceeds of the sale of its collateral. If the attorney took the funds with knowledge of the creditor's rights in them and if the transfer was not in the *Page 161 
ordinary course of business, it would appear that ITT may be entitled to proceed against the funds in the hands of the attorney. See Comment 2 (c) to § 7-9-306, Code of Alabama; Inre Martin, 25 B.R. 25, 29 (Bkrtcy.N.D.Tex. 1982); Anderson,Clayton Co. v. First American Bank, 614 P.2d 1091, 1094-95
(Okla. 1980).
Based on our reading of North Georgia Finishing, supra, it appears to us that due process requires the creditor to demonstrate probable cause for the garnishment at the hearing. If this were a case between two innocent parties, we might be inclined to place the entire burden of proof on the creditor. See Funk, supra. To establish probable cause for the garnishment in this case, it was sufficient for the creditor to show that the proceeds were wrongfully withheld from it, that they were placed in the account, that the amount in question was on deposit when the garnishment was executed, and that there was a significant risk of concealment, transfer, or other disposition of the funds between the time the motion was filed and the time a judgment could be taken. If the debtor was able to prove that there was an intermediate balance lower than $2,352.50, or if it was able to present any other evidence that the garnishment was wrongful, it could have presented that evidence at the hearing.
 4. EFFECT OF THE FAILURE TO GIVE NOTICE
It is undisputed that the sheriff failed to serve a notice of the order of garnishment on the defendant as is required by Rule 64. Alabama Mobile Homes argues that because it was not given proper notice the trial court erred in refusing to dismiss the order.
The purpose of the notice requirement is to notify the defendant that its property has been seized and inform it of its right to be heard within 15 days of the seizure on the issue of the dissolution of the writ if it files a request for such a hearing within five days. If such a request is made, the order will expire on the 15th day from the date of the seizure unless a hearing is held and the court continues the order in effect. Rule 64 (b)(2)(B), A.R.Civ.P.
The order in question was issued on June 6, 1984, and the sheriff seized the funds on that day. Although no notice was given, the defendant was informed by the bank of the seizure and it did, in fact, within five days file a motion seeking a hearing on the dissolution of the writ. Moreover, a hearing was held on the question of the dissolution of the writ within the 15-day time limit. Since the defendant did, in fact, file a timely request and receive the hearing to which it was entitled, its claim that it was, in effect, deprived of an opportunity to be heard is without merit. The error was harmless and cannot provide the basis for a reversal. A.R.A.P. 45.
 5. WHETHER THE ACTION SHOULD HAVE BEEN BROUGHT IN THE BESSEMER DIVISION
Finally, Alabama Mobile Homes argues that the plaintiff should have brought its action in the Bessemer Division of the Jefferson County Circuit Court. Alabama Mobile Homes does business in Bessemer and the collateral was kept in Bessemer before it was sold.
The threshold determination with regard to whether an action should be brought in the Bessemer Division or the Birmingham Division is to determine whether the action should be brought in Jefferson County. The venue statute provides that a domestic corporation may be sued in any county in which it does business or was doing business at the time the action arose. Section6-3-7, Code of Alabama 1975. The principal place of business of the defendant in this case is Jefferson County. Therefore, the action was properly.brought in that county.
Since this case was properly brought in Jefferson County, we must determine which of the two divisions the case should have been filed in. An action must *Page 162 
be brought in Bessemer if it "arises" within the territorial boundaries of the Bessemer Cutoff. Local Act No. 213, § 2, p. 62, Ala. Acts 1919. All suits maintainable in Jefferson County which do not arise in Bessemer should be brought in the Birmingham Division. Ex parte Central of Georgia Ry. Co.,243 Ala. 508, 512, 10 So.2d 746, 750 (1942). See Cleveland, "Territorial Jurisdiction of the Circuit Court in the Bessemer Cutoff," Vol. 3, No. 2, Birmingham Bar Ass'n Bull. (Summer 1982). For purposes of determining which division a case should be filed in, an action on a promissory note is said to "arise" where the note is payable and where default in payment occurs.Metrobank v. Real Coal Co., 374 So.2d 296, 297 (Ala. 1979);Seaboard Surety Co. v. William R. Phillips Co., 279 Ala. 510,187 So.2d 264, 267 (1966). The performance of the obligations under this note was due in Georgia. Since the action was maintainable in Jefferson County and it did not arise in Bessemer, it was properly brought in the Birmingham Division.
Defendant's petition for the writ of mandamus is due to be denied.
WRIT DENIED.
TORBERT, C.J., and ALMON, EMBRY and ADAMS, JJ., concur.