SMITH, Justice.
Valentina Lugo de Vega, the widow of Sylvestre Vega, and Sylvestre Vega, Jr., Valeria Maria Vega, Jesus Eduardo Vega Lugo, and Matthew Luke Vega Lugo, the children of Sylvestre Vega (collectively, “the plaintiffs”), petition this Court for a writ of mandamus directing the Jefferson Circuit Court to vacate its order transferring the plaintiffs’ claims against Tom Shelton, James Shelton, and Jay Electric Company, Inc., to Tuscaloosa County (no. 1091491). Defendants John Wilson and Wilson’s Diesel Service, L.L.C., on their own behalf and also on behalf of defen *888 dants Debco Diesel, Cottondale Diesel Repair, Inc., John Wilson d/b/a Debco Diesel, and John Wilson d/b/a Cottondale Diesel Repair, Inc. (collectively, “the Wilson defendants”), also petition this Court for a writ of mandamus directing the Jefferson Circuit Court to transfer the plaintiffs’ claims against them to Tuscaloosa County (no. 1091495). We grant the plaintiffs’ petition and issue the writ, and we deny the Wilson defendants’ petition.

Facts and Procedural History

This action arises from an accident that occurred on August 3, 2007, in which Syl-vestre Vega was fatally electrocuted by a generator for a lighting system at a drilling site. At the time of the accident, Vega was employed as a laborer for Capstone Drilling Company at a methane-gas drilling site in Jefferson County. The principal place of business of Capstone Drilling is in Tuscaloosa County.
As a result of the fatal accident, the plaintiffs, residents of Tuscaloosa County, sued Tom Shelton, a resident of Tuscaloosa County, in the Bessemer Division of the Jefferson Circuit Court on October 5, 2007. In the complaint, the plaintiffs alleged that “Tom Shelton is the owner of Capstone Drilling and has been at all times material herein” and that “[Tom Shelton] is responsible, in whole or in part, for the condition of the generator machine.” Without specifying the identity of Vega’s supervisor at the methane-gas drilling site, the plaintiffs further alleged that “[Vega] was asked by his superior to climb a generator light pole to move the focus of a generator light” and that, “[w]hile climbing the generator light pole, [Vega] came in contact with an energized male plug coming from the generator, which resulted in a fatal electrical current going through his body and resulting in his death.” The complaint contains only one count, “Willfulness,” which states:
“The plaintiff[s] further allege[] that all of the generator lights on the subject generator were wired incorrectly in that the male end of the plugs were energized and the female end of the plugs were non-energized.
“The plaintifffs] further allege[] that at the female end of an electrical plug is a guard on generators, and other electrical machines, to keep someone from being shocked or electrocuted while coming in inadvertent contact with the energized portion of the electrical system.
“The plaintiff[s] further allege[] that the incorrect, or backwards, wiring of the subject generator was the result of the removal, failure to maintain, and/or failure to install proper electrical plugs, where the female end should have been energized and the male end non-energized. In this case, the male plug, in violation of the National Electrical Code, was energized.
“The plaintiff[s] bring[] suit against the Defendant Tom Shelton pursuant to Alabama Code § 25-5-11 for his willful conduct in removing, failing to maintain, and/or failing to install proper guarding on the electrical generator.
“The plaintiff[s] further allege[] that it is the direct and proximate result of the removal, failure to maintain and/or failure to install proper electrical circuitry, and plugs, resulted in plaintiff[s’] decedent, Sylvestre Vega, being fatally electrocuted, when he came in inadvertent contact of the male end of the plug, which was erroneously energized.”
Tom Shelton answered the plaintiffs’ complaint on December 11, 2007, raising various defenses, including the affirmative defense “that venue is improper in this court.”
In February 2008, the plaintiffs filed a first amended complaint to assert claims against Cowin Equipment Company, Inc. The plaintiffs alleged that Cowin Equip *889 ment “sold the subject light generator (light plant) which fatally injured Mr. Syl-vestre Vega, to Mr. Vega’s former employer, Capstone Drilling.” The plaintiffs asserted claims against Cowin Equipment under the Alabama Extended Manufacturer’s Liability Doctrine (“the AEMLD”), as well as claims of negligence and wantonness. The trial court dismissed Cowin Equipment as a party to this action in July 2009 pursuant to a “stipulation of pro tanto dismissal” filed by Cowin Equipment.
In April 2008, the plaintiffs filed a second amended complaint to assert claims against Terex Amida Corporation. The plaintiffs alleged that “the Terex Amida Corporation manufactured, designed, sold, and/or marketed the light generator which electrocuted Sylvestre Vega.” The plaintiffs asserted claims against Terex Amida under the AEMLD, as well as claims of negligence and wantonness. The trial court dismissed Terex Amida as a party to the action in August 2009 pursuant to a “stipulation of pro tanto dismissal” filed by Terex Amida.
In May 2008, the trial court entered a scheduling order, setting the discovery deadline for June 1, 2009, the dispositive-motion deadline for July 1, 2009, and the trial date for October 19, 2009.
In August 2008, the plaintiffs filed a third amended complaint to assert claims against James Shelton and Jay Electric Company. The plaintiffs alleged that “[James Shelton] is the owner of Capstone Drilling Company” and that “[he] had electrical work done on his company’s light plant generator which electrocuted Sylvestre Vega.” Like the claim against Tom Shelton, the plaintiffs alleged a willfulness claim against James Shelton “pursuant to Alabama Code § 25-5-11 for the willful conduct in removing, failing to maintain, and/or failing to install proper guarding (the male and female plugs) on the light plant generator.” The plaintiffs also alleged that “Jay Electric Company, Inc., performed electrical work on the light generator,” and they alleged claims of negligence and wantonness against Jay Electric. James Shelton and Jay Electric answered the plaintiffs’ complaint on October 28, 2008, and November 6, 2008, respectively, each raising the affirmative defense “that venue is improper in this court.”
In February 2009, the plaintiffs filed a fourth amended complaint to assert claims against Burgess Equipment Repair, LLC. The plaintiffs alleged that “Burgess Equipment Repair, LLC, did electrical work on the light generator in 2007 and that said work was a result in the failure to maintain and/or failure to install proper electrical circuitry and plugs.” The plaintiffs asserted negligence and wantonness claims against Burgess Equipment Repair based upon its servicing the generator. Burgess Equipment is not a party in the petitions before this Court.
In July 2009, the plaintiffs filed a fifth amended complaint to assert claims against the Wilson defendants. The plaintiffs alleged that the Wilson defendants “did electrical work on the light generator in 2007 and that said work was a result in the failure to maintain and/or failure to install proper electrical circuitry and plugs.” The plaintiffs asserted negligence and wantonness claims against the Wilson defendants based upon the Wilson defendants’ servicing of the generator.
In August 2009, Tom Shelton and James Shelton moved for a summary judgment. From all that appears before this Court, that motion is still pending in the trial court.
The Wilson defendants answered the complaint on September 8, 2009. The Wilson defendants did not specifically assert that venue in Jefferson County was improper. Rather, the Wilson defendants *890 asserted: “The Wilson defendants expressly reserve the right to assert any and all additional defenses, including Rule 12b defenses” and “[t]he Wilson defendants adopt and incorporate herein any and all defenses that may be asserted by any other defendant or defendants which may later be named in this case.”
On September 9, 2009, the day after the Wilson defendants answered the complaint, the trial court entered an amended scheduling order, stating that “amendments to the pleadings must be filed within 90 days of the date of this Order; otherwise, only [by] leave of [the] court,” and setting the discovery deadline for June 1, 2010, and the trial date for August 23, 2010.
On January 5, 2010, nearly four months after answering the complaint, the Wilson defendants moved for a change of venue to Tuscaloosa County under Rule 82(b)(1)(A), Ala. R. Civ. P. The Wilson defendants asserted that venue in Jefferson County was improper because, they argued, venue in Jefferson County was improper as to the only defendant named at the commencement of the action, Tom Shelton.[1] Alternatively, the Wilson defendants argued that, if venue in Jefferson County is proper, the action should be transferred to Tuscaloosa County based on the doctrine of forum non conveniens.[2] Then, on January 22, 2010, the Wilson defendants filed an amended answer to the complaint, without leave of the trial court. In the amended answer, the Wilson defendants specifically “preserve[d] all defenses pursuant to Rule 12(b) of the Alabama Rules of Civil Procedure, including ... improper venue.”
On February 11, 2010, the plaintiffs responded to the Wilson defendants’ motion for a change of venue and moved to strike the amended answer of the Wilson defendants on the ground that it was untimely. See Rule 15(a), Ala. R. Civ. P. (requiring a party to obtain leave of court to amend a pleading less than 42 days before a trial setting). The next day, February 12, 2010, the trial court denied the plaintiffs’ motion to strike the Wilson defendants’ amended answer and ordered the Wilson defendants to reply to the plaintiffs’ response to the motion for a change of venue by February 26, 2010. The Wilson defendants then moved the trial court to stay the briefing on the motion for a change of venue until the deposition of John Wilson occurred. In the motion, the Wilson defendants asserted that “[e]ounsel for plaintiffs expressed a need to depose John Wilson in order to fully respond to the venue issue before this court.” The trial court granted the motion to stay.
On May 28, 2010, the Wilson defendants replied to the plaintiffs’ response to the motion for a change of venue of the action. Then on June 1, 2010, Jay Electric also moved the trial court for a change of venue *891 to Tuscaloosa County. Jay Electric adopted the Wilson defendants’ motion for a change of venue, and it reasserted that venue was improper in Jefferson County because venue was improper there as to the original defendant, Tom Shelton. Two weeks later, on June 15, 2010, Tom Shelton and James Shelton moved to join the motions for a change of venue filed by the Wilson defendants and Jay Electric.
On June 18, 2010, the trial court held a hearing on the motions for a change of venue. After the hearing, the trial court entered an order, stating:
“Defendants John Wilson and Wilson[’s] Diesel Service, L.L.C., motions to transfer are denied as the court finds that said defendants waived their right to transfer by not timely filing a request for the same.
“As to all other defendants, however, the court grants their respective motions to transfer and directs the circuit clerk to transfer their causes to the Circuit Court of Tuscaloosa County, Alabama.”
The plaintiffs have timely petitioned this Court for a writ of mandamus directing the Jefferson Circuit Court to vacate its order transferring their claims against Tom Shelton, James Shelton, and Jay Electric to Tuscaloosa County.[3] The Wilson defendants have timely petitioned this Court for a writ of mandamus directing the Jefferson Circuit Court to transfer the plaintiffs’ claims against them to Tuscaloosa County. See Rule 21(a)(3), Ala. R.App. P.

Standard, of Review

“A petition for the writ of mandamus is the appropriate means by which to challenge a trial court’s order regarding a change of venue. The writ of mandamus is an extraordinary remedy; it will not be issued unless the petitioner shows ‘ “ ‘(1) a clear legal right in the petitioner to the order sought; (2) an imperative duty upon the respondent to perform, accompanied by a refusal to do so; (3) the lack of another adequate remedy; and (4) properly invoked jurisdiction of the court.’ ” ’ Ex parte Inverness Constr. Co., 775 So.2d 153, 156 (Ala.2000) (quoting Ex parte Gates, 675 So.2d 371, 374 (Ala.1996)); Ex parte Pfizer, Inc., 746 So.2d 960, 962 (Ala. 1999).”
Ex parte Children’s Hosp. of Alabama, 931 So.2d 1, 5-6 (Ala.2005).
Applying the general rules to a petition for a writ of mandamus challenging a ruling related to venue, this Court has held: “The burden of proving improper venue is on the party raising the issue and on review of an order transferring or refusing to transfer, a writ of mandamus will not be granted unless there is a clear showing of error on the part of the trial judge.” Ex parte Finance America Corp., 507 So.2d 458, 460 (Ala.1987). “Our review is limited to only those facts that were before the trial court.” Ex parte Kane, 989 So.2d 509, 511 (Ala.2008).

Analysis

A. The Plaintiffs’ Petition (Case no. 1091191)

The plaintiffs contend that Tom Shelton, James Shelton, and Jay Electric each waived the right to contest venue in Jefferson County as a matter of law because, they say, the motions to change venue under Rule 82(d)(1), Ala. R. Civ. P., “came far too late.” The plaintiffs’ peti *892 tion, at p. 8. Alabama law is well settled that “the appropriate method to attack improper venue is to appear and make timely motion, and on a failure to do so the improper venue is waived.” Jordan v. Guaranty Pest Control, Inc., 292 Ala. 601, 606, 298 So.2d 244 (1974) (footnote omitted; emphasis added). Here, the plaintiffs note that the motions for a change of venue by the Sheltons and Jay Electric were filed “after the discovery deadline, less than 3 months prior to the trial date, 29 months after Tom Shelton filed his answer, over 19½ months after James Shelton filed his answer, 19 months after Jay [Electric] filed its answer, and nearly a year after the Sheltons filed their motion for summary judgment.” The plaintiffs’ petition, at p. 8.
We first consider whether venue in Jefferson County is proper. In Ex parte Walter Industries, Inc., 879 So.2d 547, 548-49 (Ala.2003), this Court noted:
“ ‘The question of proper venue for an action is determined at the commencement of the action.’ Ex parte Pratt, 815 So.2d 532, 534 (Ala.2001). ‘If venue is not proper at the commencement of an action, then, upon motion of the defendant, the action must be transferred to a court where venue would be proper.’ Ex parte Overstreet, 748 So.2d 194, 196 (Ala.1999).”
At the commencement of the instant action Tom Shelton was the only named defendant. Therefore, if venue in Jefferson County was improper as to him, “then, upon motion of [a] defendant, the action must be transferred to a court where venue would be proper.” Ex parte Overstreet, 748 So.2d 194, 196 (Ala.1999). Later amendments to the complaint to add parties or claims, with the exception of substituting the true name of a fictitiously named party, are not considered in determining whether venue is improper at the commencement of the action. See Rule 15(c)(4) (“relation back is permitted by principles applicable to fictitious party practice pursuant to Rule 9(h)”).[4]
Therefore, we must first determine whether venue as to Tom Shelton, the original defendant, is proper in Jefferson County. We look to § 6-3-2, Ala.Code 1975, which governs the proper venue in civil actions against individuals. Section 6-3-2(a)(3) provides that venue in “proceedings of a legal nature against individuals” is proper in either the county in which the defendant resides or “in the county in which the act or omission complained of may have been done or may have occurred.” See also Rule 82(b)(1)(A), Ala. R. Civ. P. Here, it is undisputed that Tom Shelton resides in Tuscaloosa County; therefore, the issue is whether the “act or omission complained of’ in the initial complaint may have occurred in Jefferson County.
As referenced above, the initial complaint contained only one count, willfulness, against Tom Shelton. The plaintiffs specifically alleged that “plaintiffs] bring[] suit against the Defendant Tom Shelton pursuant to Alabama Code § 25-5-11 for his willful conduct in removing, failing to maintain, and/or failing to install *893 proper guarding on the electrical generator.” The complaint does not specify where this alleged wrongful conduct occurred, and the Sheltons and Jay Electric presented the trial court with substantial evidence showing that Tom Shelton did not take any actions in Jefferson County related to the generator and Vega’s death.
In moving for a change of venue, the Sheltons and Jay Electric argued that all the acts or omissions alleged against Tom Shelton occurred in Tuscaloosa County because, they said, “neither James Shelton [n]or Tom Shelton worked on the subject crew” with Vega and that, “while the injury may have occurred [in Jefferson County], all of the acts or omissions made the basis of this case occurred in Tuscaloosa County.” Further, in support of their motion for a change of venue, the Sheltons submitted an affidavit of James Shelton in which he testified that “at the time of [Vega’s] fatal accident of August 3, 2007 ... neither my son, Tom Shelton, nor I were present at the job site.” The plaintiffs have not disputed this contention. Further, in the Sheltons’ motion for a summary judgment, filed more than nine months before the Sheltons moved for a change of venue to Tuscaloosa County, the Sheltons asserted that “Tom Shelton has repeatedly stated that he is not, and has never been, involved in the maintenance of the light plants; neither does he have knowledge of when and how the wires were reversed.”
The plaintiffs have not disputed the assertion that Tom Shelton was not in Jefferson County when the accident occurred. Rather, the plaintiffs took the following position in the trial court:
“Because the generator was used in the course of Capstone Drilling’s business on the day of [Vega’s] death in the Bessemer Division, the wrongful conduct of Tom (and James) Shelton in failing to maintain and install the safety devices on the machine at their Tuscaloosa shop is not the only wrongful act or omission that they have committed. To the contrary, they also wrongfully failed to maintain and install the safety devices on the generator while it was in the Bessemer Division.”
This argument fails because the “acts or omissions complained of’ in the initial complaint are based upon the “willful and intentional” conduct of Tom Shelton, and the trial court had no evidence before it that such conduct occurred in Jefferson County. Under § 6-3-7, “the inquiry is not the location of the injury, but the location of the events or omissions giving rise to the claim.” See Ex parte Suzuki Mobile, Inc., 940 So.2d 1007, 1009-10 (Ala.2006). Because Tom Shelton has demonstrated that he took no action related to the generator in Jefferson County, we conclude that venue in Jefferson County was improper. See Ex parte Children’s Hospital of Alabama, 931 So.2d at 7 n. 6.[5]
*894 Although we have determined that venue is improper in Jefferson County, we must consider whether the Sheltons and Jay Electric waived the defense of improper venue. Because the Sheltons and Jay Electric pleaded improper venue in their respective answers to the complaint, they preserved their right to file a timely motion for a change of venue under Rule 82, Ala. R. Civ. P. See Ex parte Movie Gallery, 31 So.3d 104, 111 (Ala.2009). Specifically, Rule 82(d)(1), Ala. R. Civ. P., states: “When an action is commenced laying venue in the wrong county, the court, on timely motion of any defendant, shall transfer the action to the court in which the action might have been properly filed and the case shall proceed as though originally filed therein.” (Emphasis added.) Rule 82 does not define what constitutes a “timely motion” for a change of venue, but Rule 1(c), Ala. R. Civ. P., provides us with the general instruction that the Alabama Rules of Civil Procedure “shall be construed and administered to secure the just, speedy and inexpensive determination of every action.”[6] This Court has addressed the timeliness of a motion for a change of venue under Rule 82(d)(1), Ala. R. Civ. P., on several occasions, and we turn to those cases for further guidance in determining whether the motions for a change of venue filed by the Sheltons and Jay Electric were timely filed. See Ex parte Starr, 419 So.2d 222, 223 (Ala.1982); Ex parte Movie Gallery, 31 So.3d at 111; and Ex parte Michelin North America, Inc., 56 So.3d 604, 610 (Ala.2010).
In Ex parte Starr, this Court held: “The first time the defendant raised the venue issue came some nine months after the complaint was filed. This is not a timely objection under Alabama Rules of Civil Procedure, Rule 82.” 419 So.2d at 223. In that case, the defendant moved to set aside a default judgment against him on the ground that his “failure to file an answer was due to inadvertence or mistake.” Id. The trial court set aside the default judgment, and the plaintiffs challenged its ruling by a petition for a writ of mandamus to this Court. After this Court denied the plaintiffs’ petition for a writ of mandamus, the defendant moved the trial court to transfer the action under Rule 82. The trial court denied the motion on the basis that it was untimely filed, and the defendant then petitioned this Court for a writ of mandamus directing the trial court to transfer the action. This Court denied the petition, concluding that, “[ujnder these facts, we hold that [the defendant’s] objection to venue comes too late.” 419 So.2d at 223. In explaining its decision, this Court noted that the defendant had “put the plaintiffs to considerable expense, both in terms of time and money, and has sought and received relief from a default judgment” and that “[o]nly after the plaintiffs failed in this Court to have the judgment reinstated did he raise the venue issue.” Id.
In Ex parte Movie Gallery, the plaintiff sued the defendants in Montgomery County, asserting claims of slander and intentional interference with business relationships. For unknown reasons, the plaintiff agreed to extend the defendants’ time in which to answer the complaint. The defendants then answered the complaint, raising the defense of improper venue, and, nearly two months after answering the complaint, the defendants moved for a change of venue. The trial court denied *895 the motion for a change of venue, and the defendants then petitioned this Court for a writ of mandamus directing the trial court to transfer the action. This Court granted the petition and issued the writ, in part, holding: “[The defendants] filed [a] motion for a change of venue 81 days after [the] answer would have been due, absent the agreement, and 55 days after [the] answer was filed pursuant to the agreement. Under the facts as presented to this Court, the motion was not untimely.” Ex parte Movie Gallery, 31 So.3d at 111.
In Ex parte Michelin, the plaintiff filed an AEMLD action against the defendants in Barbour County. The defendants answered the complaint, raising the defense of improper venue. The plaintiff then filed first and second amended complaints, which the defendants answered, each time raising the defense of improper venue. Two and a half months after the defendants answered the plaintiffs second amended complaint, the defendants moved to transfer the action to Autauga County. The trial court denied the motion to transfer the action, and the defendants then petitioned this Court for a writ of mandamus directing the trial court to transfer the action.
In responding to the petition, the plaintiff argued that the defendants’ motion for a change of venue was untimely because, the plaintiff said, the defendants were neither vigilant nor diligent in moving to transfer the action. Specifically, the plaintiff asserted that the defendants had “ ‘waited over seven (7) months before [they] sought to transfer venue under Rule 82 despite knowing that venue was improper when [they were] was first served with the Complaint.’ ” 56 So.3d at 611 (quoting the plaintiffs petition). This Court held that the defendants’ motion for a change of venue was timely. Relying on Ex parte Movie Gallery, this Court held that the passage of two and a half months between the time the defendants answered the second amended complaint and the filing of the motion for a change of venue did not render the motion untimely. In supporting the holding, this Court noted that “[a] defendant may need at least some time to marshal evidence to prove the allegation that venue is improper,” 56 So.3d at 611, and cited 14D Charles Alan Wright, Arthur R. Miller, and Edward H. Cooper, Federal Practice and Procedure: Jurisdiction § 3829 (2007): “On occasion a party who has raised a proper objection to venue will make use of discovery before pressing for a decision on the venue objection. The service of interrogatories and the taking of depositions is not, in itself, a waiver of the venue defense.” This Court summarized its holding as.follows:
“In short, [the defendants] consistently preserved [the] right to file a timely motion for a change of venue in each of [their] answers to [the plaintiffs] complaint and amended complaints. [The defendants] then engaged in discovery aimed at supporting such a motion. Upon completion of that discovery, [the defendants] filed a motion for a change of venue on the alternative bases of improper venue and forum non conve-niens. [The plaintiff] has conceded in the circuit court and on appeal that venue is improper in Barbour County, and the circuit court noted in its order that there was no evidence indicating that venue was proper in Barbour County at the time the action was filed. Under these circumstances, we conclude that [the defendants’] motion for a change of venue was not untimely and that the circuit court erred in denying [the defendants’] motion on that basis.”
56 So.3d at 612.
Under the facts of this case, we conclude that the motions for a change of venue *896 filed by the Sheltons and Jay Electric were untimely. Simply, venue in Jefferson County was clearly improper as to Tom Shelton at the commencement of the action, and Tom Shelton, James Shelton, and Jay Electric have not demonstrated a reasonable basis for waiting 29 months, 19½ months, and 19 months, respectively, between preserving the right to file a timely motion to transfer the action and filing the motion. Further, the Sheltons have not demonstrated a reasonable basis for waiting nearly nine months after moving for a summary judgment in Jefferson County before moving to transfer the action to Tuscaloosa County. These unreasonable delays in filing the motions to transfer the action constitute a waiver of the improper-venue defense.
We note that the Sheltons and Jay Electric argue that they necessarily waited until the deposition of John Wilson occurred in May 2010 before moving for a change of venue, because, they say, John Wilson was “most critical to the issue of venue.” Shel-tons’ brief, at p. 14. We disagree. As discussed in detail above, venue in Jefferson County was clearly improper at the commencement of this action, and the testimony of John Wilson was unnecessary in demonstrating that venue was improper in Jefferson County. The plaintiffs alleged a claim against Tom Shelton for his alleged acts and omissions related to the generator, and, upon receipt of the complaint, he should have been immediately aware that he had not engaged in any willful conduct related to the generator in Jefferson County and, therefore, that venue in Jefferson County was improper.
Because the motions to transfer the action to Tuscaloosa County filed by the Sheltons and Jay Electric were untimely, the plaintiffs have a clear legal right to an order vacating the trial court’s order granting those motions.[7]

B. The Wilson Defendants (Case no. 109U95)

The Wilson defendants also petition this Court for a writ of mandamus directing the trial court to transfer the plaintiffs’ claims against them to Tuscaloosa County. As referenced above, the trial court denied the Wilson defendants’ motion for a change of venue on the ground that they “waived their right to transfer by not timely filing a request for the same.”
Rule 12(h)(1), Ala. R. Civ. P., states:
“A defense of lack of jurisdiction over the person, improper venue, insufficiency of process, or insufficiency of service of process is waived (A) if omitted from a motion in the circumstances described in subdivision (g),[8] or (B) if it is neither made by motion under this rule nor included in a responsive pleading or an amendment thereof permitted by Rule 15(a) to be made as a matter of course.”
Here, the Wilson defendants neither raised the defense of improper venue by motion under Rule 12 nor included the defense of *897 improper venue in their initial answer to the complaint. Instead, in their initial answer, they stated that “[t]he Wilson defendants expressly reserve the right to assert any and all additional defenses, including Rule 12b defenses” and “[t]he Wilson defendants adopt and incorporate herein any and all defenses that may be asserted by any other defendant or defendants which may later be named in this case.” (Emphasis added.) This is not sufficient pleading of a defense of improper venue in a responsive pleading because both assertions are merely reservations of the right to raise any defenses in the future, rather than the assertion of a certain defense. We recognize that the Wilson defendants filed an amended answer that specifically raised the defense of improper venue after they moved for a change of venue and that the trial court denied the plaintiffs’ motion to strike the amended answer, but we hold that the assertion of the defense in the amended answer was not in compliance with Rule 12(h) because the amended answer was not “permitted by Rule 15(a) ... as a matter of course.” The trial court’s scheduling order required leave of court to amend a pleading, and the Wilson defendants did not obtain leave of court before filing the amended answer. Because the Wilson defendants did not preserve the right to file a motion for a change of venue in accordance with Rule 12(h), Ala. R. Civ. P., the Wilson defendants waived the right to move for a change of venue. Accordingly, we hold that the Wilson defendants do not have a clear legal right to a writ of mandamus directing the trial court to transfer the plaintiffs’ claims against them to Tuscaloosa County.

Conclusion

Based on the foregoing, the plaintiffs’ petition for the writ of mandamus is granted, and the Wilson defendants’ petition for the writ of mandamus is denied.
1091491 — PETITION GRANTED; WRIT ISSUED.
1091495 — PETITION DENIED.
COBB, C.J., and WOODALL, PARKER, and SHAW, JJ., concur.

. Rule 82(b)(1)(A), Ala. R. Civ. P., states:
"Actions against an individual or individuals having a permanent residence in this state:
"(A) Must be brought in the county where the defendant or any material defendant resides at the commencement of the action, except that if the action is a personal action other than an action on a contract, it may be brought either in the county where the act or omission complained of occurred, or in the county of the permanent residence of the defendant or one of them....”

. Alabama’s forum non conveniens statute, § 6-3-21.1 (a), Ala.Code 1975, provides, in pertinent part:
"With respect to civil actions filed in an appropriate venue, any court of general jurisdiction shall, for the convenience of parties and witnesses, or in the interest of justice, transfer any civil action or any claim in any civil action to any court of general jurisdiction in which the action might have been properly filed and the case shall proceed as though originally filed therein....”

. From all that appears, Burgess Equipment Repair did not move the trial court to transfer the plaintiffs’ claims against it to Tuscaloosa County. The plaintiffs include a footnote in their petition stating: "Although the claims against Burgess are still pending, plaintiffs will contest its motion for summary judgment.” The plaintiffs’ petition, at p. 8 n. 10.

. We note that the plaintiffs did not amend the complaint to substitute the true name of a fictitiously named defendant in accordance with Rule 9(h), Ala. R. Civ. P. To invoke the relation-back principle of Rule 15(c)(4), a plaintiff
"(1) must state a cause of action against the party named fictitiously in the body of the original complaint and (2) must be ignorant of the identity of the fictitiously named party, in the sense of having no knowledge at the time of the filing that the later-named party was in fact the party intended to be sued.”
Crawford v. Sundback, 678 So.2d 1057, 1059 (Ala. 1996). Here, the plaintiffs did not state causes of action against fictitiously named parties.

. As noted, the underlying action was brought in the Bessemer Division of the Jefferson Circuit Court. This Court has advised that, when determining whether venue is proper within the Bessemer Division,
"the court first asks whether venue is proper in Jefferson County under the applicable venue laws. Ex parte Alabama Mobile Homes, 468 So.2d 156 (Ala. 1985). If it is, the court then determines in which division venue is proper: ‘the Bessemer Division can hear only cases that have "arisen” within the territorial boundaries of that division.’ [Ex parte ] Walter Indus.[, Inc.], 879 So.2d [547] at 551 [ (Ala.2003) ]. If the cause of action did not arise within the territorial boundaries of the Bessemer Cutoff, then venue is in the Birmingham Division.”
Ex parte Children’s Hosp. of Alabama, 931 So.2d at 7 n. 6. Our conclusion that venue was improper in Jefferson County under the applicable venue laws necessarily pretermits consideration of whether venue was proper in the Bessemer Division.

. In Ex parte Michelin North America, Inc., 56 So.3d 604 (Ala.2010), this Court held that "Rule 82(d) does not impose a 30-day time limit for filing a motion for a change of venue when venue is improper at the commencement of the action." See Ex parte Movie Gallery, 31 So.3d at 109 (holding that "[njeither subsection (i) nor (ii) [of Rule 82(d)(2)(C), Ala. R. Civ. P.J apply to a motion for a change of venue at the commencement of the action”).

. We pretermit discussion of the defendants’ arguments related to the doctrine of forum non conveniens because the doctrine of forum non conveniens "has a field of operation only where an action is commenced in a county in which venue is appropriate.” Ex parte New England Mut. Life Ins. Co., 663 So.2d 952, 956 (Ala. 1995).

. Rule 12(g), Ala. R. Civ. P., states:
"A party who makes a motion under this rule may join with it any other motions herein provided for and then available to the party. If a party makes a motion under this rule but omits therefrom any defense or objection then available to the party which this rule permits to be raised by motion, the party shall not thereafter make a motion based on the defense or objection so omitted, except a motion as provided in subdivision (h)(2) hereof on any of the grounds there stated.”