Rel: February 27, 2026

**Notice:** This opinion is subject to formal revision before publication in the advance sheets of **Southern Reporter**. Readers are requested to notify the **Reporter of Decisions**, Alabama Appellate Courts, 300 Dexter Avenue, Montgomery, Alabama 36104-3741 ((334) 229-0650), of any typographical or other errors, in order that corrections may be made before the opinion is printed in **Southern Reporter**.

# SUPREME COURT OF ALABAMA

## OCTOBER TERM, 2025-2026

_____

### SC-2025-0613
_____

### Ex parte Continental Roofing Company, LLC

### PETITION FOR WRIT OF MANDAMUS

### (In re: Tim Cloud

### v.

### Continental Roofing Company, LLC)

### (Etowah Circuit Court: CV-25-900162)

MENDHEIM, Justice.

Continental Roofing Company, LLC ("Continental"), petitions this Court for a writ of mandamus directing the Etowah Circuit Court to vacate its order denying Continental's motion to dismiss all the claims asserted against it by Tim Cloud for improper venue and to enter an order granting its motion to dismiss or, in the alternative, to transfer the case to the Madison Circuit Court. We deny the petition.

## I. Facts

Because Continental's petition seeks review of the circuit court's order denying its motion to dismiss, the facts before us are those provided in Cloud's complaint. Cloud alleged:

> "1. In and during 2011, [Cloud] engaged [Continental] to install a GAF slate roof on his home.
>
> "2. In and during 2012, it was determined that the 'GAF deck armor,' which serves to protect the roof decking, was moving, unsightly, and exposing the roof decking to moisture.
>
> "3. From December 2012 until November 2023, agents and employees at Continental and GAF attempted to repair the roof.
>
> "4. On January 2, 2020, the Workmanship Warranty Service Agreement with Continental was extended to May 31, 2027.
>
> "5. The GAF deck armor has never been fully repaired, continues to be unsightly and exposed the roof decking to moisture.

2

"6. The last communication from Continental was February 20, 2024, and ever since such time Continental has refused to communicate with [Cloud]."

On April 1, 2025, Cloud commenced the action against Continental. Cloud's complaint contained two counts. In the first count, Cloud asserted:

"2. Continental expressly and impliedly warranted that the roof was of merchantable quality and installed correctly. Continental warranted that any defects would be remedied in a timely manner.

"3. [Continental] has breached its warranty as the roof is defective, not correctly installed, and was not timely repaired."

For count one, Cloud sought "such sum as shall be determined by the trier of fact." In count two, Cloud asserted: "2. Continental negligently or wantonly installed a roof and/or negligently or wantonly repaired, or failed to repair, the roof." For count two, Cloud sought "compensatory and punitive damages and costs" "as shall be determined by the trier of fact."

On June 22, 2025, Continental filed a "Motion to Dismiss for Improper Venue." In that motion, Continental asserted:

"4. The Workmanship Warranty Service Agreement between [Cloud] and [Continental] referenced in [Cloud's] Complaint contains a forum-selection clause, which provides that the courts of Madison County, Alabama have venue over

3

any dispute arising out of or relating to that agreement. A copy in substantially the same form as the referenced Workmanship Warranty Service Agreement is attached hereto as Exhibit 'A'"

"5. The Workmanship Warranty Service Agreement includes an unambiguous forum-selection clause that states as follows:

"'4.6 **GOVERNING LAW**. This Agreement shall be construed and governed by the laws of the State of Alabama. The venue of any action filed by any party with respect to this Agreement shall be enforceable in the state and federal courts presiding in Madison County, Alabama to the exclusion of all other courts.'"

(Bold typeface in original.) In its motion to dismiss, Continental argued that the forum-selection clause contained in the document attached to its motion should be enforced because the clause's language was unequivocal and it was not unfair or unreasonable to enforce the clause under the circumstances. Continental requested that the circuit court enter "an order enforcing the parties' forum-selection clause and dismissing this action for improper venue, plus grant further relief as justice so requires."

The document Continental attached to its motion was an entirely blank two-page form titled "Service Agreement" that contained no dates, no signatures, no identification of any customer, no term of service, and no contract number. The document listed as "Basis for Service," among

4

other things, "Workmanship Defects," "Storm Damage," and "Material Defects." As Continental had stated in its motion, the document contained a section that provided: "The venue of any action filed by any party with respect to this Agreement shall be enforceable in the state and federal courts presiding in Madison County, Alabama to the exclusion of all other courts."

On July 1, 2025, Cloud filed a response to Continental's motion to dismiss in which he argued:

> "Curiously, [Continental] attempts to assert an 'outbound' forum selection clause in a 'service agreement' without any indication that such agreement was signed by [Cloud]. [Continental] does not even attempt to claim that the forum selection provision was part of an oral agreement. Agreements of the type asserted by [Continental] must be signed by the party against whom enforcement is sought. Code of Alabama [§] 7-2-201.[1] For this reason alone, the motion must be denied."

Cloud further argued that the forum-selection clause contained in the "Service Agreement" attached to Continental's motion was unreasonable for various reasons "[a]ssuming arguendo that a signed agreement existed." Cloud also observed that, in addition to asserting a claim of

---

[1]Section 7-2-201, Ala. Code 1975, is Alabama's Statute of Frauds, which applies to "a contract for the sale of goods for the price of five hundred dollars ($500) or more ...." § 7-2-201(a).

breach of contract, he had also asserted claims of negligence and breach of an implied warranty, while the claimed forum-selection clause "is very narrow and limited to claims 'with respect to this Agreement.'" Cloud concluded that the fact that there is "no executed agreement containing the 'outbound venue' provision and the manifest unfairness of such provision in this context, were it present, compel this Court to deny [Continental's] motion."

On the same day, July 1, 2025, Continental submitted a reply to Cloud's response to its motion. In its reply, Continental sought to blunt Cloud's argument that Continental had not submitted an executed copy of the "service agreement" that contained the forum-selection clause upon which its motion was based:

> "3. In reply, [Continental] states that [Cloud] has the executed service agreement in his sole possession and should have attached a copy of it to his Complaint for breach of that agreement. If [Cloud] asserts that no executed agreement exists, then [Cloud's] Count I for breach of contract/warranty is due to be dismissed immediately as he has no enforceable claims against [Continental]."

Continental also attempted to counter Cloud's reasons as to why the enforcement of the forum-selection clause contained in the "Service Agreement" would be unreasonable.

6

On July 9, 2025, the circuit court entered an order stating that, after considering the filings from the parties concerning Continental's motion, the motion was denied.

On July 22, 2025, Continental filed an answer to Cloud's complaint in which it denied all the material allegations and asserted multiple affirmative defenses.

On August 21, 2025, Continental filed a petition for a writ of mandamus to this Court, seeking an order directing the circuit court to vacate its July 9, 2025, order and to enter an order dismissing all of Cloud's claims against it on the basis of improper venue or to transfer the action to the Madison Circuit Court.

## II. Standard of Review

> "'"Mandamus is a drastic and extraordinary writ, to be issued only where there is (1) a clear legal right in the petitioner to the order sought; (2) an imperative duty upon the respondent to perform, accompanied by a refusal to do so; (3) the lack of another adequate remedy; and (4) properly invoked jurisdiction of the court." Ex parte Integon Corp., 672 So. 2d 497, 499 (Ala. 1995).'
>
> "Ex parte CTB, Inc., 782 So. 2d 188, 190 (Ala. 2000). In Ex parte CTB, this Court established that a petition for a writ of mandamus is the proper vehicle for obtaining review of an order denying enforcement of an 'outbound' forum-selection

7

clause when it is presented in a motion to dismiss.[2] Indeed, an attempt to seek enforcement of the outbound forum-selection clause is properly presented in a motion to dismiss without prejudice, pursuant to Rule 12(b)(3), Ala. R. Civ. P., for contractually improper venue. Additionally, we note that a party may submit evidentiary matters to support a motion to dismiss that attacks venue. Williams v. Skysite Communications Corp., 781 So. 2d 241 (Ala. Civ. App. 2000), quoting Crowe v. City of Athens, 733 So. 2d 447, 449 (Ala. Civ. App. 1999)."

Ex parte D.M. White Constr. Co., 806 So. 2d 370, 372 (Ala. 2001). "'In Alabama, we review the trial court's decision on the enforcement of such a clause to determine whether the trial court exceeded its discretion in deciding not to enforce the outbound forum-selection clause. See Ex parte Procom Servs., 884 So. 2d [827,] 830 [(Ala 2003)].'" Ex parte COWS USA, LLC, 401 So. 3d 1100, 1105 (Ala. 2024) (quoting F.L. Crane & Sons, Inc. v. Malouf Constr. Corp., 953 So. 2d 366, 372-73 (Ala. 2006)).

---

2"'An "outbound" forum selection clause is one providing for trial outside of Alabama, while an "inbound" clause provides for trial inside Alabama.'" Ex parte PT Sols. Holdings, LLC, 225 So. 3d 37, 40 n.2 (Ala. 2016) (quoting Professional Ins. Corp. v. Sutherland, 700 So. 2d 347, 348 n.1 (Ala. 1997) (plurality opinion)).

Despite the terminology sometimes used by the parties in their submissions to the circuit court and to this Court, the provision relied upon by Continental is an "inbound" forum-selection clause because it provides for trial inside Alabama. That distinction makes no difference with respect to whether mandamus relief is available for the denial of a motion to dismiss based on a forum-selection clause.

### III. Analysis

Continental argues that the circuit court clearly erred in refusing to grant its motion to dismiss because the language of the forum-selection clause in the "Service Agreement" is unequivocal in requiring actions to be filed in Madison County and because Cloud failed to demonstrate that enforcement of the forum-selection clause would be unreasonable under the circumstances. In making those arguments, Continental attempts to rely upon principles that have been reiterated by this Court on multiple occasions.

> "'It is well established that an outbound forum-selection clause
>
>> "'"'will be "upheld unless the party challenging the clause clearly establishes that it would be unfair or unreasonable under the circumstances to hold the parties to their bargain." Ex parte CTB, Inc., 782 So. 2d [188,] 190-91 [(Ala. 2000)]. The showing is sufficient where it is clearly established "'(1) that enforcement of the forum selection clause[] would be unfair on the basis that the contract[] [was] affected by

9

fraud, undue influence, or overweening bargaining power or (2) that enforcement would be unreasonable on the basis that the chosen ... forum would be seriously inconvenient for the trial of the action.'" Id. at 191 ....'

"'"Ex parte Leasecomm Corp., 886 So. 2d [58,] 62-63 [(Ala. 2003)] (emphasis omitted). The Court has noted that '[t]he burden on the challenging party is difficult to meet.' Ex parte D.M. White Constr. Co., 806 So. 2d [370,] 372 [(Ala. 2001)]."

"'Ex parte PT Solutions Holdings, LLC, 225 So. 3d 37, 42 (Ala. 2016).'

"Ex parte International Paper Co., 285 So. 3d 753, 757 (Ala. 2019).

"'When an agreement includes a clearly stated forum-selection clause, a party claiming that [the] clause is unreasonable and therefore invalid will be required to make a clear showing of unreasonableness. In determining whether such a clause is unreasonable, a court should consider these five factors: (1) Are the parties business entities or businesspersons? (2) What is the subject matter of the contract? (3) Does the chosen forum have any inherent advantages? (4) Should the parties have been able to understand the

10

agreement as it was written? (5) Have extraordinary facts arisen since the agreement was entered that would make the chosen forum seriously inconvenient? We state these items not as requirements, but merely as factors that, considered together, should in a particular case give a clear indication whether the chosen forum is reasonable.'

"Ex parte Northern Cap. Res. Corp., 751 So. 2d 12, 14 (Ala. 1999)."

Ex parte COWS USA, 401 So. 3d at 1105-06.

However, in relying upon the foregoing legal principles, Continental skips over the fundamental fact that it has not established that the parties agreed to be bound by the forum-selection clause upon which Continental based its motion to dismiss.

We observed in Part II of this opinion that "a party may submit evidentiary matters to support a motion to dismiss that attacks venue." Ex parte D.M. White Constr. Co., 806 So. 2d at 372. Presumably, that is what Continental intended to do by attaching the "Service Agreement" to its motion to dismiss and by asserting in that motion that the attached document was "[a] copy in substantially the same form" as "[t]he Workmanship Warranty Service Agreement between [Cloud] and [Continental] referenced in [Cloud's] Complaint." "'"'"[I]f a plaintiff does

11

not incorporate by reference or attach a document to its complaint, but the document is referred to in the complaint and is central to the plaintiff's claim, a defendant may submit <u>an indisputably authentic copy</u> to the court to be considered on a motion to dismiss."'"'" <u>Borden v. Malone</u>, 327 So. 3d 1105, 1111-12 (Ala. 2020) (quoting <u>Bell v. Smith</u>, 281 So. 3d 1247, 1252 (Ala. 2019), quoting in turn <u>Donoghue v. American Nat'l Ins. Co.</u>, 838 So. 2d 1032, 1035 (Ala. 2002), quoting in turn <u>Wilson v. First Union Nat'l Bank of Georgia</u>, 716 So. 2d 722, 726 (Ala. Civ. App. 1998), quoting in turn <u>GFF Corp. v. Associated Wholesale Grocers, Inc.</u>, 130 F.3d 1381, 1384-85 (10th Cir. 1997)) (emphasis added).

In his response to Continental's motion to dismiss, Cloud expressly disputed that the "Service Agreement" Continental relied upon was agreed to by the parties, noting that "[Continental] attempts to assert an 'outbound' forum selection clause in a 'service agreement' without any indication that such agreement was signed by [Cloud]." In his answer to the mandamus petition, Cloud is even more unequivocal: "Cloud did not and has not received the form 'Service Agreement' relied upon by Continental and has not found it among the documents in his possession.

12

The blank form document attached to [the motion to dismiss] makes no reference or connection to Cloud." Cloud's answer, p. 2.

One of Continental's responses to Cloud's denials is that

"[t]he Complaint filed by Cloud in this case includes a breach of warranty claim that is predicated on the existence of a Service Agreement between the parties, the same agreement on which Continental relied in support of its motion to dismiss or transfer venue. See [Petitioner's] Appendix Attachment 1, Complaint, [paragraph] 4 ('On January 2, 2020, the Workmanship Warranty Service Agreement with Continental was extended to May 31, 2027.').

"5. A breach of express warranty claim presupposes the existence of a valid and enforceable agreement. A party may not simultaneously rely on a contract to assert a claim while repudiating the provision that governs the forum for that claim. See Macon Cnty. Greyhound Park v. Knowles, 39 So. 3d 100, 111 (Ala. 2009) ('It is elementary that one cannot at once repudiate and enforce a contract.'); Credit Sales, Inc. v. Crimm, 815 So. 2d 540, 546 (Ala. 2001) (noting that a party 'cannot pick and choose which contract provisions she wishes to have benefit her and reject those she does not wish to have bind her; instead, she must accept or reject the entire contract.'). Thus, Cloud's contention that there was 'no meeting of the minds' cannot be reconciled with his own reliance on the Service Agreement as the basis for his claims."

Continental's reply brief, pp. 5-6.

That argument would follow if Continental had established that the "Service Agreement" it attached to its motion to dismiss was the same as the "Workmanship Warranty Service Agreement" Cloud referenced in his

13

complaint. But as Cloud observes, the "Service Agreement" Continental submitted contained no information of any kind identifying it with Continental's business dealings with Cloud: "There is no verification of any sort that a form of this type was sent to Cloud. One would believe that Continental would, at least, have a form setting out the 'Customer,' 'Customer [number],' [and] 'Date of Purchase,' even if Cloud's signature did not appear on the document." Cloud's answer, pp. 3-4.

Continental attempts to cover this hole in its argument by asserting in its petition that "[t]he Service Agreement is sent to Continental's customers in duplicate forms once payment for installation has been made. Customers are instructed to sign both copies of the agreement and return one signed copy to Continental for its records. Some customers follow through with the instructions and some do not."[3] Continental's petition, p. 7. But the foregoing statements are assertions, not evidence. "[I]t is well settled that statements in a brief are not evidence." Ex parte Safeway Ins. Co. of Alabama, 947 So. 2d 380, 383 (Ala. 2006). See also Ex

---

[3]Continental similarly asserted in its reply to Cloud's response to the motion to dismiss that "[Cloud] has the executed service agreement in his sole possession and should have attached a copy of it to his Complaint for breach of that agreement."

14

parte American Res. Ins. Co., 663 So. 2d 932, 936 (Ala. 1995) ("This Court is bound by the record, and it cannot consider a statement or evidence in a party's brief that was not before the trial court. ... In considering a mandamus petition, we must look at only those facts before the trial court.").

"'Once the party challenging venue has met the burden of pleading improper venue, he then has the burden of proving that venue is improper.'" Ex parte Michelin N. America, Inc., 56 So. 3d 604, 611 (Ala. 2010) (quoting Ex parte Pratt, 815 So. 2d 532, 538 (Ala. 2001)). The "Service Agreement" Continental attached to its motion to dismiss for improper venue did not, by itself, establish that the "Workmanship Warranty Service Agreement" Cloud referenced in his complaint contained the forum-selection clause upon which Continental relies. Continental did not submit any affidavits averring that it provided a filled-out copy of the "Service Agreement" to Cloud or that one of its employees witnessed Cloud sign a "Service Agreement" that contained the subject forum-selection clause. Likewise, Continental did not seek discovery to demand that Cloud produce his copy of the "Workmanship

Warranty Service Agreement" to see if it contained the subject forum-selection clause.[4]

It is certainly true that "'"[a]ssent [to a contract] must be manifested by <u>something</u>. Ordinarily, it is manifested by a <u>signature</u>. [However], [a]ssent may be manifested by <u>ratification</u>."'" <u>Franklin Structures, LLC v. Williams</u>, [Ms. SC-2024-0586, Aug. 29, 2025] __ So. 3d __, __ (Ala. 2025) (quoting <u>Ex parte Cain</u>, 838 So. 2d 1020, 1027 (Ala. 2002), quoting in turn <u>Southern Energy Homes, Inc. v. Hennis</u>, 776 So. 2d 105, 108 (Ala. 2000)). Cloud's admitted acceptance of roof-repair work under the "Workmanship Warranty Service Agreement" would constitute ratification of the terms of the "Workmanship Warranty Service Agreement" even if he never signed it. But as we have explained, Continental presented no evidence to the circuit court that established that the entirely blank "Service Agreement" it attached to its motion to dismiss contained the same terms as the "Workmanship Warranty

---

[4]Parties are entitled to conduct discovery related to the issue of venue. See, e.g., <u>Ex parte Michelin N. America, Inc.</u>, 56 So. 3d 604, 612 (Ala. 2010) (quoting with approval the observation in 14D Charles Alan Wright, Arthur R. Miller, and Edward H. Cooper, <u>Federal Practice and Procedure: Jurisdiction</u> § 3829 (2007), that "'[o]n occasion a party who has raised a proper objection to venue will make use of discovery before pressing for a decision on the venue objection'").

Service Agreement" and, in particular, that it contained the same forum-selection clause. Without that link, Continental did not carry its burden of proving that Etowah County is an improper venue for Cloud's action.

### IV. Conclusion

"'"The burden of proving improper venue is on the party raising the issue and on review of an order transferring or refusing to transfer, a writ of mandamus will not be granted unless there is a clear showing of error on the part of the trial judge."'" Ex parte Tyson Chicken, Inc., 72 So. 3d 1, 2 (Ala. 2011) (quoting Ex parte Pike Fabrication, Inc., 859 So. 2d 1089, 1091 (Ala. 2002), quoting in turn Ex parte Finance America Corp., 507 So. 2d 458, 460 (Ala. 1987)). Continental did not prove that the sole proper venue for this suit is Madison County because it failed to present evidence establishing that Cloud had agreed to be bound by the forum-selection clause that is contained in the entirely blank "Service Agreement" that Continental attached to its motion to dismiss. Consequently, Continental failed to show that the circuit court clearly erred in denying Continental's motion to dismiss for improper venue. Therefore, we deny the petition for a writ of mandamus.

PETITION DENIED.

Stewart, C.J., and Shaw, Wise, Bryan, Sellers, Cook, McCool, and Parker, JJ., concur.